# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS K. MYERS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| GEICO CASUALTY COMPANY, | : | No. 17-3933 |
| Defendant. | : | |

### MEMORANDUM OPINION

**Timothy R. Rice**                                                                                  **January 10, 2019**
**U.S. Magistrate Judge**

     Plaintiff Louis K. Myers alleges Defendant GEICO Casualty Company acted in bad faith by refusing to indemnify and defend Tatiana Chapman after she collided with Myers while driving a car insured by GEICO. See Notice of Removal (doc. 1), Compl. GEICO seeks summary judgment, asserting it acted properly because Chapman was not an insured under its policy (the "Policy"). See S.J. Mot. (doc. 40). I agree. Summary judgment is granted in favor of GEICO.

**I.    Legal Standard**

     Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "factual issues . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Alternatively, no dispute of material fact exists if there is no evidence from "which the jury could reasonably find for the plaintiff." Id. at 252. I must view the facts and draw inferences in the light most favorable to Myers as the nonmoving party. See Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d

Cir. 2013). I also "may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255.

Under Pennsylvania law, which applies here, the interpretation of an insurance policy generally involves a question of law. See Myers's Resp. to S.J. Mot. (doc. 42), Ex. V, Policy; Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011). I must determine the parties' intent as manifested by the terms of the Policy. Murray, 658 F.3d at 320. I shall read the Policy as a whole and attempt to give effect to all of its provisions. Id. When the language is clear and unambiguous, I must give effect to the plain meaning of the terms. Id. If the language is ambiguous, I generally must read the Policy "in favor of the insured and against the insurer, the drafter of the agreement." Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1174 (Pa. 2006) (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 2006)). "Contractual language is ambiguous 'if it is reasonably susceptible to different constructions and capable of being understood in more than one sense.'" Id. (quoting Hutchison v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986)).

## II. Facts in Light Most Favorable to Myers

On August 9, 2014, Chapman and Henry Bond attended a family reunion at Lemon Hill Park in Philadelphia. Myers's Resp. to S.J. Mot, Ex. O, Chapman Aff., ¶ 1. Because Chapman left her daughter's diaper bag in Bond's car, she asked Bond for his car keys. See id. ¶¶ 2-4. Bond gave Chapman the keys and she walked to the car with her daughter. See id. ¶ 6. After noticing parking spots closer to the reunion, Chapman decided to move the car closer. See id. ¶¶ 7-8. While moving the car, Chapman collided with Myers's van and Myers was severely injured. See id. ¶ 10; GEICO Facts (doc. 40-1) ¶¶ 3-4; Myers's Resp. to Facts (doc. 42-3) ¶¶ 3-

2

4.

At the time of the accident, Bond's car was insured by GEICO. GEICO Facts ¶ 12; Myers's Resp. to Facts ¶ 12; see also Resp. to S.J. Mot., Ex. V, Policy, Declarations Page. Jasmine Tucker, who was Bond's girlfriend, was the "Named Insured" on the Policy and Bond was listed as an "Additional Driver." See Declarations Page of Policy; Resp. to S.J. Mot., Ex. Q, 6/5/2018 Wright Dep. at 13. Chapman was not named or identified in the Policy. See Declarations Page, Policy. The Policy required GEICO to "pay damages which an insured becomes legally obligated to pay" because of bodily injury or property damage "arising out of the ownership, maintenance or use of the owned auto . . . ." Policy at 3. GEICO also agreed to "defend any suit for damages payable under the terms of [the Policy]." Id.

After being notified of the accident, Stephen Wright, a GEICO claim representative, spoke to Bond, Chapman, and Tucker.[1] GEICO Facts ¶ 6; Myers's Resp. to Facts ¶ 6. Bond told Wright that he gave Chapman the keys to get a diaper bag from the car. See 6/5/2018 Wright Dep. at 17; GEICO Facts ¶ 9; Myers's Resp. to Facts ¶ 9. Bond also stated that Chapman had never driven his car, that she did not ask for permission to drive his car, and that he would not have given her permission if she had asked.[2] 6/5/2018 Wright Dep. at 17; GEICO Facts ¶¶

---

[1] Although Bond's, Chapman's, and Tucker's conversations with Wright were recorded, Bond's conversation could not be transcribed and portions of Chapman's and Tucker's conversations could not be transcribed. See GEICO Facts ¶ 7; Myers's Resp. to Facts ¶ 7.

[2] I may consider Bond's statements to Wright as non-hearsay to explain why GEICO decided to deny coverage and also for their truth because they are capable of being admitted at trial through testimony from Bond, or the residual hearsay exception in Federal Rule of Evidence 807. See Fed. R. Civ. P. 56(c)(1)(A) (summary judgment facts may be supported by depositions, documents, admissions); Shelton v. Univ. of Med. & Dentistry of New Jersey, 223 F.3d 220, 226 (3d Cir. 2000) (hearsay statements can be considered on a motion for summary judgment if capable of admission at trial); Fed. R. Evid. 807 (hearsay statement may be admitted if it is trustworthy, material, probative, in the interests of justice, consistent with the purposes of the

9-10; Myers's Resp. to Facts ¶¶ 9-10.

Chapman told Wright that she had never driven Bond's car before, that she did not have permission to drive the car, and that she lacked a driver's license. See GEICO Facts at ¶ 11; Myers's Resp. to Facts ¶ 11; Chapman Aff. ¶¶ 13-14. Nevertheless, Chapman believed she was allowed to move the car. Chapman Aff. ¶¶ 14-15.

Tucker told Wright that Bond owned the car, that she was not present at the time of the accident, and that she did not give Chapman permission to use the car. 6/5/2018 Wright Dep. at 13; see also Myers's Resp. to S.J. Mot., at 12; Myers's Supp. Br. (doc. 45) at 3-4; S.J. Br. (doc. 40-2) at 5-6.

Based on his investigation, Wright determined that Chapman did not have permission to drive the car at the time of the accident and recommended to his supervisor that GEICO deny coverage for Chapman. See 6/5/2018 Wright Dep. at 22-24. This recommendation was adopted and Wright subsequently wrote to Chapman, stating GEICO was denying coverage because she used the car without "the permission of the owner." Resp. to S.J. Mot., Ex. F, 8/25/2014 Letter to T. Chapman; see also Ex. E, 8/25/2014 Letter to H. Taylor; 6/5/2018 Wright Dep. at 25-29.

In October 2014, Myers sued Chapman, Bond, and Tucker in state court, claiming Chapman was negligent in causing the car collision and that Bond and Tucker had negligently entrusted Chapman with the car. See GEICO Facts ¶ 17; Myers's Resp. to Facts ¶ 17; Myers's

---

Rules of Evidence, and accompanied by proper notice). Moreover, Myers and/or Chapman admit the information in Bond's statements. See Myers's Resp. to Facts ¶ 9 (admitting Bond gave Chapman the keys and Chapman did not ask for permission to use the car); id. ¶ 11 (admitting Chapman told Wright she had never driven Bond's car before and she did not have permission to drive the car); Chapman Aff. ¶¶ 2-4, 7-8 (stating the diaper bag was in Bond's car, she needed to get the diaper bag out of the car, she asked Bond for the keys, and she decided to move the car after seeing closer parking spots).

Resp. to S.J. Mot., Ex. I, 10/2014 Compl. Myers alleged that Chapman had actual and implied consent from Bond and Tucker to drive the car at the time of the accident. 10/9/2014 Compl. ¶¶ 8-9. GEICO agreed to defend Bond and Tucker but refused to defend Chapman. See GEICO Facts ¶¶ 17-18; Myers's Resp. to Facts ¶¶ 17-18. Based on a review of the information obtained by Wright from Bond, Chapman, and Tucker, GEICO representatives determined that the Policy did not cover the claims against Chapman because she did not have permission to drive the car. See GEICO Facts ¶¶ 20-29; Myers's Resp. to Facts ¶¶ 20-29.

GEICO later decided to tender the Policy limits of $15,000 to Myers in exchange for a release of its claims against Bond.[3] See GEICO Facts ¶ 33; Myers's Resp. to Facts ¶ 33. In April 2017, Chapman gave Myers a consent judgment for $1,500,000 and assigned to Myers any rights she had against GEICO for its refusal to indemnify and defend her. See GEICO Facts ¶ 34; Myers's Resp. to Facts ¶ 34. Myers filed this lawsuit against GEICO, alleging GEICO breached the implied covenant of good faith and fair dealing in the Policy and violated the Pennsylvania bad faith statute, 42 Pa. C.S. § 8371. See Notice of Removal, Compl.

## III.   Discussion

GEICO contends it had no duty to indemnify or defend Chapman because the undisputed facts show she was not an insured under the Policy. Alternatively, GEICO contends that it did not engage in bad faith by refusing to indemnify and defend Chapman based on its reasonable determination that she was not an insured under the Policy.[4]

---

[3]   It is unclear how the claims against Tucker were resolved.

[4]   GEICO also argues that it cannot be liable for more than the Policy limit of $15,000 because Myers agreed not to execute the $1,500,000 consent judgment against Chapman. I do not address this issue as I find that GEICO is entitled to summary judgment for other reasons.

5

*Breach of Duty to Indemnify*

Because a lawsuit for breach of the implied covenant of good faith and fair dealing stems from the promises made by the insurer to the insured in the insurance policy, an insured under the policy must file the lawsuit.[5] See Cowden v. Aetna Cas. & Sur. Co., 134 A.2d 223, 228 (Pa. 1957) (because contractual relationship in indemnity policy requires high degree of good faith by insurer, "the insurer must act with the utmost good faith toward the insurer in disposing of claims against the latter"); Gray v. Nationwide Mut. Ins. Co., 223 A.2d 8, 11 (Pa. 1966) ("By asserting in the policy the right to handle all claims against the insured . . . the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured."); Birth Center v. The St. Paul Companies, Inc., 787 A.2d 376, 379 (Pa. 2001) ("Where an insurer refuses to settle a claim that could have been resolved within policy limits without 'a bona fide belief . . . that it has a good possibility of winning,' it breaches its contractual duty to act in good faith and its fiduciary duty to its insured.") (quoting Cowden, 223 A.2d at 229); Klinger v. State Farm Mut. Auto. Ins. Co., 895 F. Supp. 709, 715 (M.D. Pa. 1995) ("An insurer's duty to deal in good faith applies to all persons who are 'insured' under the insurance policy."). Similarly, the plain language of the bad faith statute makes clear that a lawsuit based on that statute must be brought by an insured in the policy.[6] See 42 Pa. C.S. § 8371 ("[i]n an action arising under an insurance policy, if the court

---

[5] An insurer is "derelict" in its duty to act in good faith toward the insured where clear and convincing evidence shows "it negligently investigate[d a] claim or unreasonably refuse[d] an offer of settlement [and] it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured." Gedeon v. State Farm Mut. Auto. Ins. Co., 223 A.2d 8, 9-10 (Pa. 1966).

[6] An insurer violates the bad faith statute where an insured shows by clear and convincing evidence that "(1) that the insurer did not have a reasonable basis for denying benefits under the

finds that the insurer has acted in bad faith toward the insured, the court" may award interest, punitive damages, and assess court costs and attorney fees); Klinger, 895 F. Supp. at 715 ("the statute provides a cause of action against an insurer who acts in bad faith with respect to an 'insured,' and the language means precisely what it says: the duty runs to one covered under the insurer's policy of insurance").

In determining who is an insured under the Policy, I must look to the terms of the Policy. See Klinger, 895 F. Supp. at 715. GEICO agreed in the Policy to "pay damages which an insured becomes legally obligated to pay" because of injury or damages from the use or ownership of an "owned auto." Policy at 3. The Policy defined an "owned auto" as "a vehicle described in the policy for which a premium is shown for these coverages." Id. The Policy defined an Insured as "a person or organization described under 'Persons Insured." Id. In the "Persons Insured" section, the Policy stated that the following were insureds with regard to "an owned auto":

1. you and your relatives;

2. any other person using the auto with your permission. The actual use must be within the scope of that permission.[7]

Id. at 4. The Policy defined "You" as "the policyholder named in the declarations and his or her spouse if a resident of the same household." Id. at 3.

Although the Declarations Page is addressed to Tucker and she is identified as the Named

---

policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017).

[7] The Policy also defined an Insured as "any other person or organization for his or its liability because of acts or omissions of an insured under 1 and 2 above." Policy at 4. The parties do not assert that this section applies and I find it is not applicable.

Insured, she is not clearly and unambiguously defined or identified as the only "Policyholder." See Declarations Page. Rather, the Policy also reasonably could be read to include Bond, who is named an Additional Driver on the Declarations Page, as a Policyholder for his "owned auto," which is listed as a covered vehicle.[8] See id.; Sartno, 903 A.2d at 1174. Thus, to be an insured for Bond's car under the Policy, Chapman needed be a relative of Tucker or Bond or have Tucker's or Bond's permission to drive the car on August 9, 2014.

The parties do not dispute that Chapman was not Tucker's relative and that Chapman did not have Tucker's permission to use the car on August 9, 2014. See Myers's Resp. to S.J. Mot., at 12; Myers's Supp. Br. at 3-4; S.J. Br. at 5-6. The parties also agree that Chapman was not Bond's relative and that Chapman did not have Bond's express permission to use the car on August 9. See GEICO Facts ¶¶ 9-11; Myers's Resp. to Facts ¶¶ 9-11. The parties, however, dispute whether Chapman had Bond's implied permission to use the car. See Myers's Counter Statement of Facts ¶¶ 10-13; Myers's Resp. to S.J. Mot. at 10-18.

"Under an omnibus clause of an automobile insurance policy which designates as insured any person using the insured vehicle with the permission of the owner, the permission necessary to elevate the user to the status of an additional insured may be express or implied." Federal Kemper Ins. Co. v. Neary, et al., 530 A.2d 929, 931 (Pa. Super. 1987) (citing Pennsylvania Supreme Court and Superior Court cases). Implied permission can arise from the parties' relationship or "a course of conduct in which the parties have mutually acquiesced." Id. Such permission, however, requires "more than mere sufferance or tolerance without taking steps to

---

[8] GEICO has interpreted the Policy in this way. In its initial letter denying coverage to Chapman, GEICO stated it was doing so because Chapman was using the car "without the permission of the owners." 8/25/2014 Letter to Chapman.

8

prevent the use of the automobile, and permission cannot be implied from possession and use of the automobile without the knowledge of the named insured." Id. (citing Blashfield, Automobile Law and Practice § 315.10, at 608 (3d ed. 1966)). "The critical question [is] whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be 'a connection made' with the named insured's own conduct; proof of 'acts, circumstances, and facts, such as the continued use of the car,' will be insufficient 'unless they attach themselves in some way to the acts' of the named insured." Id. (citing Belas v. Melanovich, 372 A.2d 478, 484 (Pa. Super. 1977)).

Although Chapman admits that she never asked Bond "for permission to use the car," she claims that she "did not think that [she] was not allowed to move the car closer to Lemon Hill Park" and she "did not think that [she] was doing anything wrong in moving the car closer to Lemon Hill Park." Chapman Aff. ¶¶ 11-12. Myers argues that Chapman's subjective beliefs show she had Bond's implied permission to drive the car, which should have triggered further investigation by GEICO before it denied coverage. Myers's Resp. to S.J. Mot. at 17-18. Chapman's beliefs, however, fail to establish that she had implied permission. The "critical question" was whether Bond said or did something that warranted Chapman, an unlicensed driver, to have those beliefs. Neary, 530 A.2d at 931.

Myers contends that Bond's act of giving Chapman the car keys allowed Chapman to believe she could drive the car. See Myers's Resp. to S.J. Mot. 17; Myers's Resp. to Facts ¶ 9. Chapman, however, admits that she asked for the car keys only to obtain a diaper bag from the car, not to drive the car. See Chapman Aff. ¶¶ 2-4, 9 (I needed to get the diaper bag from Bond's car, I asked Bond for his car keys, I did not ask Bond for permission to use the car). GEICO also

9

learned this same information when interviewing Bond. See 6/5/2019 Wright Dep. at 17; GEICO Facts ¶ 9; Myers's Resp. to Facts ¶ 9. Further, the parties do not dispute that Chapman told GEICO that she had never driven Bond's car before and she lacked a driver's license. See GEICO Facts ¶ 11; Myers's Resp. to Facts ¶ 11. Myers presents no evidence to suggest that this information was untrue. Based on this undisputed evidence, viewed in the light most favorable to Myers, a reasonable juror could not conclude that Bond said or did something to warrant Chapman to believe she had Bond's implied permission to drive the car or that GEICO's investigation of the implied permission issue was inadequate. See State Farm Mut'l Ins. Co. v. Judge, 592 A.2d 712, 715 (Pa. Super. 1991) (driver was not insured under policy where evidence showed insured/owner of the car did not engage "in conduct which implied consent" to the driver to operate his car); Neary, 530 A.2d 929 (Pa. Super. 1987) (driver was not insured under policy because there was no evidence showing "the named insured had said or done anything to warrant the belief that the ensuing use by the unlicensed driver was with his consent").

Chapman was not an insured under the Policy and has no standing to bring bad faith claims against GEICO based on its refusal to indemnify her. See Sierra Club v. Morton, 405 U.S. 727, 740 (1972) (lawsuits must be brought by those "who have a direct stake in the outcome"); Gray, 223 A.2d at 11 (cause of action for breach of duty of good faith and fair dealing stems from insurance contract); Klinger, 895 F. Supp. at 716 (only those persons covered by policy have "standing to assert claim of bad faith" against insured); 42 Pa. C.S. § 8371 (creating cause of action where insurer has acted "in bad faith toward the insured").

*Breach of Duty to Defend*

Even if Chapman was not an insured under the Policy, Myers argues that GEICO acted in bad faith by refusing to defend her during Myers's personal injury lawsuit because Myers alleged facts suggesting she was an insured, i.e., that she had Bond's and Tuckers's actual and implied permission to drive the car at the time of the accident. See 10/9/2014 Compl. ¶¶ 8-9.

An insurer's duty "to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) (citing Wilson v. Maryland Casualty Co., 105 A.2d 304, 307 (Pa. 1954)); see also Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 533 (Pa. 2010) ("duty to defend is triggered when a claim against the insured is potentially covered by the insurance policy"); Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover."). Each of these cases featured a third-party complaint filed against the insured. See Kvaerner Metals Div., 908 A.2d at 891-92; Jerry's Sport Ctr., 2 A.3d at 529; Allen, 692 A.2d at 1090; Wilson, 105 A.2d at 1095.

The Pennsylvania Supreme Court has not addressed the issue now presented by Myers: whether an insurer is required to defend someone it has determined is not an insured even after a third party (Myers) has alleged that the person is an insured in a lawsuit. The parties cite no Pennsylvania decisions that have addressed this issue and I have found none.[9] Nevertheless, if

---

[9] In State Farm Mut. Auto. Ins. Co. v. Fuller, No. 1488 MDA 2016, 2017 WL 2772680 (Pa. Super. June 26, 2017), the insurer filed a declaratory judgment action to determine whether

faced with this issue, I predict the Pennsylvania Supreme Court would hold that an insurer is not required to defend someone it has determined is not an insured under the policy even if a subsequent third-party complaint suggests the person is an insured. See U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996) (where Pennsylvania Supreme Court has not spoken on subject, federal court "must predict how that tribunal would rule"). This is supported by the Pennsylvania courts' consistent reliance on the term "insured" in discussing the duty of defend. See Kvaerner Metals Div., 908 A.2d at 896; Jerry's Sport Ctr., 2 A.3d at 533; Allen, 692 A.2d at 1089; Wilson, 105 A.2d at 307. Moreover, Pennsylvania courts have made clear that the duty to defend stems directly from the insurance policy and should not apply where there is no possibility of coverage. See Allen, 692 A.2d at 1094 (insurer has duty to defend all suits and claims covered by the policy); Erie Ins. Exchange v. Fidler, 808 A.2d 587, 590 (Pa. Super. 2002) ("If we were to allow the manner in which the complainant frames the request for damages to control the coverage question, we would permit insureds . . . to receive coverage neither party intended and for which the insured was not charged."). This position also has been taken by courts in other jurisdictions that have held, like Pennsylvania, that the duty to defend is dependent on the allegations in the complaint. See also Pro Con, Inc. v. Interstate Fire & Cas. Co., 794 F. Supp. 2d 242, 250 (D. Me. 2011) (defendant must establish that it qualifies as an insured before duty of defend can be imposed based on allegations in complaint); Hartford Fire

---

it was required to insure the driver of a car owned by its insured. Although the court noted that the insurer could be required to defend the driver in a third-party lawsuit, the court did not look to the allegations in that complaint to determine the duty to defend. Id. at *3. Instead, the court determined that the insured was not required to defend or indemnify the driver because the record was "bereft of evidence" showing that the insured/car owner gave the driver permission to use the car. Id. at *4. This decision, however, was not published and is not precedential. See Super. Ct. I.O.P. § 65.37.

Ins. Co. v. Leahy, 774 F. Supp. 2d 1104, 1114 (W.D. Wash. 2011) (court could consider information outside of the complaint to determine if party was an insured entitled to defense under the policy); Gen. Ins. Co. of Am. v. Clark Mall, Corp., 631 F. Supp. 2d 968, 974 (N.D. Ill. 2009) (although duty to defend is determined by allegations in third-party complaint, a mistaken designation of defendant in that complaint cannot require an insured to defend "a corporation with which it had no policy of insurance").

Accordingly, GEICO did not act in bad faith by refusing to defend Chapman once it reasonably determined she was not an insured under the Policy in spite of the allegations in Myers's complaint suggesting she was an insured.[10]

An appropriate Order follows.

---

[10] Myers contends that GEICO could not refuse to defend Chapman against Myers's claims of negligence while agreeing to defend Bond and Tucker against Myers's claims of negligent entrustment because both claims stemmed from whether Bond gave Chapman permission to use the car. See Myers's Resp. to S.J. Mot. at 29-35. Bond and Tucker, however, were indisputably insureds under the Policy. See supra at 8. Thus, GEICO was required to defend them if it determined that the allegations in Myers's complaint against Bond and Tucker could potentially be covered by the Policy. See Jerry's Sport Ctr., 2 A.3d at 541. GEICO was not required to defend Chapman once it reasonably determined she was not an insured covered by the Policy. Similarly, Myers was entitled to settle the lawsuit against Bond, as an insured under the Policy, and not Chapman.

Myers also argues that GEICO committed bad faith during its defense of Bond and Tucker. See Myers's Resp. to S.J. Mot. at 27-29. Although Chapman assigned her rights against GEICO to Myers, there is no evidence that Bond and Tucker assigned any of their rights to GEICO. Myers has no standing to assert a claim against GEICO on behalf of Bond and Tucker. See Sierra Club, 405 U.S. at 740.